May it please the Court, I'm Mark Gavray for Albertson's, the Appellant. I would like to The issue before this panel is whether the District Court erred in applying the de novo standard of review, rather than the abuse of discretion standard of review. The underlying matter, as we know, was an administrative denial of long-term disability benefits to Ms. Shane. The facts of that are described, I think, fairly well in the briefs. After that was denied, she filed this action in court. This was originally scheduled for trial, but the judge vacated the trial and instead decided this issue on the briefs. So, in effect, this was a summary judgment decision. Now, it is Albertson's position that the District Court did commit a reversible error by applying the wrong standard of review. And I think the best way to see that is to look at the judge's reasoning that allowed him to get to de novo review. Now, the decision in question denying benefits was made in September 2003. At that time, the plan, in effect, was the 2002 long-term disability plan. But it's not quite that simple, is it, counsel? Because in that plan, it says that any disabilities arising before the date of that plan would be governed by the prior plan. So, how do we conclude that the 2002 plan applies in this case? Well, I would like to get to exactly that. If you'd give me just a minute, I will get to that point, Your Honor. But the 2002 plan was in effect since February of that year. The 2002 plan makes Albertson's acting through its benefits department the plan administrator and gives the plan administrator complete discretion to make all decisions, to construe the terms of the plan, to make factual determinations and eligibility determinations. And that on that basis, the normal rule would be that plan applies and abuse of discretion would be. And we probably wouldn't be here. So, could you answer my question? Yes. So, the district court got to de novo review by interpreting or construing a particular plan provision. It was the one Your Honor alluded to. The provision that deals with plan administration. Excuse me. That deals with plan amendments. And this is a provision that is found in identical terms both in the 1993 plan and in the 2002 plan. Now, before the judge actually interpreted that provision, the judge did something else. The district court judge announced that it would apply the doctrine of contra pro forentum. Where did the district court announce that it was applying that doctrine? It's on page 6 of the decision as it's in the administrative record. It discussed the doctrine. That's correct, Your Honor. But where did it apply the doctrine? Well, it doesn't actually say that it is applying it, but I don't know how else to make sense of what the judge did. If you look on page 6, this is page 6 of the opinion as it's in the administrative record or the excerpt from record that we submitted to the court. The judge says, if a term is ambiguous, it will be construed against the drafter and aligned with the reasonable expectations of the insured citing case authority. And then the judge goes and quotes the provision at issue, which says any amendment to the plan shall be effective only with respect to total disabilities, which commence after the effective date of the amendment. And the next sentence, which the judge italicized, saying total disabilities commencing prior to the effective date of a plan amendment are to be provided for under the terms of the plan in effect at the time that disabilities commence. Now, the only way to make sense out of what the judge did is that he viewed that provision as ambiguous. I don't find it ambiguous. And Albertson's doesn't find it ambiguous. The provision concerns amendments with respect to total disabilities, which is a defined term in the plan. So it has to do with amendments that change the meaning of disability. Now, if such an amendment occurs, it's only going to apply to disabilities that arise after that fact. But the judge italicized the second sentence in that provision that doesn't have that qualifying language, just says any amendment. So I suppose the provision is ambiguous in that you might construe it to refer to any amendment whatsoever. Counsel, even if the district court, even if we agree with you that the district court applied that doctrine, does it matter in this case? If we look at the language de novo, does it matter? If we look at that language and we say it's not ambiguous, the 1993 plan applies, why isn't that, doesn't that resolve your argument? I'm confused, Your Honor. Our position is that the 2002 plan applies. But I'm asking you this. If you're asking us to rule that the district court improperly used the doctrine of contraprofarentum, and what if we say, okay, disregarding that doctrine, we're looking at the language of the 2002 plan without saying it's ambiguous. Okay. And it still comes to the same result. I don't think so, Your Honor. Why not? Because the 2002 plan applies effective February 1, 2002. But you have to read that the language is still in there that says if the disability arose prior to that plan, that the prior plan governs. Why doesn't that exception apply even though the 2002 plan was effective? Well, I would say, Your Honor, the disability had not arisen before the 2002 plan. Because the plaintiff, Ms. Shane, was in fact found to be disabled under the first definition of disability, which expires automatically after 24 months. Now she's up for recertification or reconsideration to determine whether or not she is totally disabled under a new definition. So it's a new disability because it's a new analysis? Is that your argument? Well, it's a new disability in the sense that it has to meet a new definition. And if you could be disabled under the prior definition, no question about it, but you're not disabled in the next. That doesn't mean it's a new disability. It means it's a new process. But that doesn't mean that the disability changed. Well, the disability is the legal, meeting a legal standard, or excuse me, a plan standard. Disability is a physical condition or a mental condition. It's not the plan definition. It's a manifestation of a physical or mental malfunction. Okay. But you're only disabled under the terms of the plan if you meet the plan's definition of that disability. So in 2002 and 2003, when her case is up for consideration, she doesn't yet have a disability unless she meets the now applicable. How is disability defined in the plan? The plan provides two definitions of it. The first one being you're disabled if you cannot perform the functions of your own occupation. The second one says you're disabled if you're unable to perform any and every duty of any occupation. And that's the second definition that comes into play in 2002 and 2004. So there's been no, I mean, Albertson's position is there's been no amendment with respect to total disabilities because the definition has remained the same between both plans. And so it's the 2002 plan that's been in effect for 18 months at the time that the decision is made. And under that plan, the plan administrator is the benefits department. And it has the discretion to make decisions. And therefore, its decision in this case should be reviewed under the abuse of discretion standard. And instead of that, the judge looked at this amendment provision and said that he would review it under the doctrine of contraprofarentum, determined that his reading of it was that it applied to any amendment, even one that had nothing to do with total disabilities. It was a change. The amendment in question really is the change in the administrative structure of the plan moving from having plan trustees to having the benefits department being the plan administrator. Counsel, I asked you about how the plan defines disability. And you told me it's defined in accordance with what you qualify for. But that's under the definition of short-term disability. Total disability says it shall mean the complete inability of the employee to perform. It doesn't define the word disability. The term at issue as capitalized is total disability. And the judge quotes it on page 7 of his decision where he says, quoting the plan, and it's the same under both plans, total disability is the complete inability of the employee to perform any and every duty of her regular. But what does the paragraph say about the plan that applies? Does it speak in terms of total disability or short-term disability or just the word disability? It uses the term total disability. And you see that also, Your Honor, in the amendment provision that the district court focused on and in construed, the first sentence of it, it says, any amendment of the plan shall be effective with respect to total disabilities. Again, it uses the term total disabilities and capitalizes it as the term is capitalized in the plan document itself. So it's not talking about any condition or anything that might be a disability. It's talking about the defined term of total disability. I'm not so much persuaded that the district court used the wrong version of the plan, as you alleged. It seems like the order reveals that it did not, even the district court's order, apply the doctrine when determining that the 1993 plan, this contra-procurement doctrine, when determining the 1993 plan applied, and even if it did apply the doctrine, it can be determined independent of the doctrine that the 1993 plan applied to the appellee's claim. I guess I'm a little more focused on the standard that was used and the factual basis for the standard that was used. Can you highlight some of your arguments from that? Well, if I understand your question, Your Honor, it seemed that the judge first applied the doctrine of contra-procurement to set aside the 2002 plan, and then he turned to the 1993 plan. I want to talk about the standard of review that was used. He used a de novo review, and I'm wondering what the factual basis was for the de novo review. Well, this is what the judge said he was doing. The first step is to turn to the 1993 plan, which I think is incorrect for the reasons I've stated. Then he looked at the 1993 plan and said they would apply de novo review under it, even though it provides for deferential review. That is, the plan administrator has discretion. Because he said, well, the trustees are the plan administrator under that plan. The committee that actually made the decision, the medical review committee, didn't have proper delegation to it of authority. And because there wasn't proper delegation, the judge decided he would not apply the abuse of discretion that would ordinarily be applied even to the 1993 plan. Well, there were written provisions for delegation, were there not? The plan itself says that the trustees may delegate their authority to employees of Albertsons. And who's Mr. Hodge? Mr. Hodge is the person who was deposed. He is the director of welfare and health and welfare plans. And what did he say about delegation? He said that, in fact, the trustees had delegated to the committee. And the court dismissed that because there was nothing in writing so indicating. Is that about what it boils down to? In fact, he said they delegated to Mr. Snow. And then Mr. Snow delegated to the medical review committee. Right. That is what he testified about how it happened. The judge didn't say anything about Mr. Snow or those steps of delegation. What the judge said is that he wouldn't accept Mr. Hodge's testimony as sufficient because the delegation hadn't been, quote, documented. And that's what the judge says on page 11. Well, isn't that a credibility determination or determination how much to credit the testimony of the affiant or the deponent? Well, we didn't have a trial, Your Honor. This was based on the pleadings. Okay. And Mr. Hodge said that it had been delegated as well. Okay, let's assume that's true. If the trustees can delegate and they delegated to Mr. Snow, then how could Mr. Snow, what was his authority to delegate to the committee then? Well, all that Mr. Hodge said was that it had been delegated to Mr. Snow, who was an executive vice president. Right. Not a trustee. He was not going to make the decisions himself. He set up the committee, which is the medical review committee. But what authority was there? The trustees did not delegate to the committee. So what authority was there for the committee to act? All that the plan says is that the trustees may delegate to employees, puts it in plural. It doesn't say anything more. It doesn't say anything about it requires certain procedures or certain steps. Right. But the trustees delegated to one person. And so that means that's the person who's authorized via the delegation. So he had to make the decision according to the delegation that was done by the trustees. And if he didn't, it's unauthorized. But that is an argument, obviously, Your Honor. Not an argument. It's an observation. Well, we don't know what the trustees said in particular. That's the point that the district court made. No? That we don't know because nothing's in writing. Well, that's right, that it's not documented. But there's no requirement that delegation be in writing. I didn't say there was a requirement. But then you have the difficulty of what the authorization was. Because if there is no authorization, even the evidence that you presented does not show that the trustees delegated to the committee. That is true. They delegated to Mr. Snow, who then created the committee. But there's nothing in the record that suggests that that is improper. What's the committee made up of? The committee is made up of employees in the benefits department advised by a consulting physician. So there's typically a panel of three who review these matters. And the district court says specifically because the MRC was not expressly granted discretion, I find the proper standard of review is de novo. So his focus was mostly on that fact. Is that correct? That appears to be the case, Your Honor. The plan document, of course, says that the trustees have discretion and they have the freedom to delegate. Now, we know that delegation took place. Now it appears that the district court is saying, well, the evidence of it wasn't sufficient because it wasn't documented. Well, there's no evidence of delegation to the committee. There's no evidence of direct delegation, Your Honor. That is correct because the testimony was that by Mr. Hodge. But it would have been appropriate for the medical review committee under Provision G of Article 9 to have done this review. Is that correct? I mean, to be vested with this authority. The problem here is that there's the facts or questions whether they're sufficient to show that that delegation was done. Apparently the medical review committee are employees, correct? Correct. And so they would constitute the delegation. They would be within this delegation provision in Part G of these provisions. Is that right? That's correct, Your Honor. But the problem is I see it. I guess the concern is that they're appropriate, but there was no the court focused on the fact that because there was no specific delegation expressly provided in the plan to allow the medical review committee, he found that that was not appropriate. And he did not look, I guess, or it's not clear whether he ignored Provision G or whether he did and knew it. He doesn't address it. It looks like his main focus is on the fact that there was no explicit provision allowing the medical review committee to be vested with this authority. The plan is very general. It just says that the trustees may delegate to employees. It doesn't say anything more than that. It doesn't mention who it may delegate or how it may delegate. And this double delegation sort of argument is new. Is that correct? Well, that's true. None of this was argued to the judge below. Did you ask for an evidentiary hearing of some kind? It was scheduled. I had my hotel and plane reservations to come, and the judge on his own vacated it within a few days before. So it was all planned on being a hearing on the record. And did you then, after the damage had been done, request some kind of reconsideration of this ruling? No, Your Honor. No. It just seemed like the judge had decided to treat this as cross motions for summary judgment, and we did not object. We got a telephone call from the judge's clerk saying this is what the judge has decided to do. So this issue of applying the doctrine of contra pro forentum is not briefed in any of the briefs. It's not an issue. This issue that there wasn't proper delegation was not briefed by anyone. The argument of Ms. Shane to the judge was that delegation had to be in writing. But it's de novo review, right? Isn't this de novo review for us? So any issue of law we can look at. That's correct. But you're arguing that there's not a sufficient factual basis yet for us to make a legal determination. So let's say we would agree with you, hypothetically, and it goes back. What would you do? Proceed with your evidentiary, with your hearings and witnesses to try to establish that the delegation was correct? Well, now that we know that the judge thinks that there was a question about the adequacy of delegation, Your Honor, that is correct. We could do that. What evidence could you add in addition to the deposition testimony of Mr. Snow? Well, there is a declaration from Mr. Hodge as well as his deposition, I believe. I mean Mr. Hodge. What else could you add that he hasn't already said? Well, we could certainly. I mean, Mr. Snow, who's no longer with the company but was the executive vice president at the time, we could seek his testimony about the delegation. I suppose we could seek evidence from the trustees. What you would need as a prelude to all of this is some kind of a holding from us, a ruling from us, that is a matter of law what the judge did in wiping out Hodge's testimony doesn't work. And so the only way you can deal with that is it's not enough to say because it wasn't in writing, it's no good. And then he has to cope with, well, then was it delegated and was the delegation appropriate under the circumstances? Well, he didn't say it wasn't in writing, did he? He said it had to be expressed. He didn't say writing. Well, he used the term documented. Documented isn't necessarily in writing. It's not. I can assume that when he said documented because Plaintiff argued in her brief that delegation to be effective has to be in writing. Right, but that's not what the district court said. The district court said it wasn't documented. Now, I view documentation as something that is in writing. But, Your Honors, I would still go back to my first point. I think this issue of delegation is a sort of second tier issue. The first issue is why wasn't the 2002 plan applied? The judge determined it wasn't applied because it viewed it as an amendment that took place after she became disabled. And so that comes back to construing that amendment procedure that is found in both plans. And it's to that amendment procedure or provision that the judge applied the doctrine of contrappropriation. Okay, we understand your argument. Counsel, you've exceeded your time. We'll give you a minute for rebuttal. I'm sorry, Your Honor. That's fine. Good morning, Your Honors. My name is Lisa Cantor. I'm here on behalf of Stacey Shane. I'd like to start by focusing on a couple of facts because facts always help, I think, figure out how to rule on cases. Stacey Shane's initial disability claim was paid effective January 2000. Was that characterized as a total disability? It was, Your Honor. And the total disability definition in both the 93 and the 2002 plan are the same. It says total disability, and then it tells how benefits will be paid during different periods of total disability. Her claim was paid for more than two years. In fact, it was paid all the way through August 2002, way after this supposed new plan was put into effect. Then she gets a letter saying, we're not sure that you're still entitled to benefits. And in that letter, she's told that if she has a dispute with the benefit determination, she's given the appeal right under the 93 plan. The language in that letter talks about appealing to fiduciaries. It doesn't talk about appealing to the plan administrator, which is what the 2002 plan says. Her claim gets reinstated, and then again in January 2003, she gets a letter saying her benefits are going to be terminated. Again, she's given the appeal rights in the 93 plan. She's told she can appeal to the trustees. This, of course, was almost a year and a half after this new plan supposedly was in effect. And then she does appeal, and in her final appeal denial letter, dated September 2003, again she's told that her remedies were under the 93 plan. The 93 plan was also submitted by stipulation of the parties to the trial court. The way a lot of ERISA cases work is there is an administrative record. There's a stipulation by the parties as to what plan applies, what the claim file is, and oftentimes there is a determination without hearing. Because until very recently, with this court's decision in the Fibush case, which talks about the taking of live testimony at ERISA cases, a lot of ERISA cases don't have live testimony. So the 93 plan gets stipulated to by both parties, put into the record. And then it was only afterwards that Albertsons came back and said, oh, no, no, we want to change it. Now it's the 2002 plan. So I think there's a little bit of revisionist history going on here. The district court found no ambiguity, as this court found no ambiguity, in what the plans say. If you have a total disability, it is governed by the plan, in effect, at the time when your total disability commences. How did the court reference the doctrine of contra preferentum? I wish I knew.  I think you make a compliant argument that the claim is governed by the 1993 plan. I'm more focused on the standard of review. Maybe you can address that. In the issue of delegation or how we applied it? Correct. Well, whether there was enough facts before the court to make a determination that it should be de novo, it looks like the district court focused primarily and almost singularly on the fact that there was no express provision giving delegation authority to the medical review committee. Actually, I think the district court did more than that. I think it did the two-step process, if I may. Maybe it's more than two. There has to be discretion in the plan given to somebody, and then the plan has to say that that somebody is able to delegate to somebody else, to some other entity. And the district court said there is discretion to the trustees, and the trustees can delegate to the contract administrator or employees. The problem the district court found was with the quality of the evidence that was given to the delegation. Two problems. First, the committee is not just employees. The committee is employees and an independent physician. So right then and there you have an entity that's not an authorized delegee. The other thing is you have a current employee saying, some guy who used to work here who doesn't work here anymore, I think they delegated it to him, and then he delegated it to me, and then I think I delegated it to the committee, and all of which is just not enough under my circumstance. My issue and I guess my concern is what the district court actually stated in his order. He says, while the trustees did have the power to delegate their discretionary authority, nothing presented to the court indicates that such authority was properly delegated. The deposition testimony offered by Mr. Hodge is insufficient to establish otherwise. And then he cites the Rodriguez-Abreu case, which says, holding that because no plan document expressly delegated their discretionary authority to the plan administrator, the district court properly employed the de novo standard of review. And then he specifically states, because the MRC was not expressly granted discretion, I find the proper standard of review is de novo. So how does that address Provision G? And it's the excerpt of record, it's Article 9, Provision G. It's under 9.04, the powers and duties of the trustee. Because that specifically, you know, allows delegation to employees, which this medical committee is, is our employees, aren't they? Well, they're not only employees. They're employees plus an independent physician. So they're not only employees. Well, did you argue that in your papers? It says it right in the decision. He says the MRC consists of Albertson's employees and an independent physician. Hodge says that in his declaration. That sounds awfully much to me like form over substance. There's some problem with having an independent physician involved in this. Of course you want somebody like that. Well, here's the ‑‑ let me go back and try to answer the first question first. I think if you look at this whole paragraph that the judge has written here, going back to the beginning of the paragraphs that Your Honor was referring to, it says first, the 93 plan contains no express delegation to anybody but the trustees. That's true. The only thing in the plan is to the trustees. And then it says that in his view, neither Jackson or the MRC nor the VPA were expressly granted fiduciary authority to use discretion. In our view, that is his evaluation of the evidence in front of him. In other words, he's accepting that it's not in the plan, but it doesn't have to be in the plan. It can be somewhere else. And the only thing I have is this declaration that is not sufficient evidence. If you look back at the case ‑‑ It is sufficient evidence, though. It's sufficient ‑‑ well. You have to discount it. You have to find it not credible enough. And the reason used is because there wasn't anything in writing. I don't know whether that's right. I don't think that that's the reason used. I think it has to be expressed. I don't think it has to be in writing. And I admit that that may have been argued below, but I don't think it has to be in writing. I think it has to be expressed. And there are other cases out there where plans have demonstrated express delegation by different trustees. What evidence was there in the record that there was an authorized indirect delegation, a second tier delegation? What was the evidence of that, that there was authority for the first delegee to delegate to a second? There's nothing. That's the problem. That's the problem. Let's assume that the trustee ‑‑ But the court never stated that. The district court never said the problem is that there's no improper delegation. And is that correct? He doesn't come out and say that, but, again, it's de novo review here on whether there's a proper delegation. And if I think the district court felt there was not sufficient evidence of a delegation from the trustees to Jack Snow, that the declaration of Michael Hodge was not enough evidence for this district court, and that factual finding needs to be reviewed under a clearly erroneous standard. He felt it was not enough evidence. But on a ‑‑ And that's not what he said, though. He said because the MRC was not expressly granted discretion, I find the proper standard review is de novo. Well, and the other part, he says the deposition offered by Mr. Hodge is insufficient to establish that there has been deference. What did you anticipate would happen at the hearing that the court all of a sudden vacated and just hit you with some findings? What were you preparing for at that hearing? In terms of ‑‑ Was that a hearing to thrash out all of this business of delegation? Well, my experience with ERISA hearings is they're very much just oral argument because everything is done on the papers. And, in fact, this whole thing wouldn't have really come up unless we had this whole problem with which plan we were talking about, which should have been resolved far before this. I mean, earlier today we were talking about Rule 26. It would have been appropriate in this case, with the benefit of hindsight, to have had that hearing. Yes, I think it's appropriate in every ERISA case to have the hearing, but my experience is you often don't get them. And you didn't argue to the district court that this double delegation from Snow to the committee was the reason that it shouldn't have been a proper delegation. I, you know ‑‑ It seems to be a new argument. I don't consider it a new argument because I ‑‑ what the argument was was that there was no express delegation to an authorized body under the 93 plan. That this committee was not an authorized body because it ‑‑ the argument was it hasn't ‑‑ Do you think they violate ‑‑ the committee violates Provision G? Isn't it supported by Provision G? If the trustees wanted to delegate directly to the committee, then I probably would not have a good argument that it's not proper, even with the independent physician sitting on it. Just like how it is now in the 2003 plan because the plan administrator is essentially the benefits department. This committee is essentially the Albertson's benefits department. And they sit by different committees, I suppose, and decide different claims. But that wasn't done here. And her claim has to be governed by the 93 plan as they kept telling her it has to be governed by the 93 plan. Did you want me to address, Your Honor, the standard of review in terms of the factual findings by the district court? Because I did want to point out that Albertson's is not asking, is not taking the position that the district court was wrong in finding her disabled. It's only saying that we get a better standard of review. And if we had had this better standard of review, maybe we would have won anyway, even though we can't really take issue with the fact that Ms. Shane is disabled as the district court found. That seems to be the main issue here is whether the appropriate standard of review, obviously the abuse of discretion would have been more favorable and deferential to the plan. Is that right? Correct. And that's the irony often in ERISA cases. Here we have a case where the district court actually was able to find on the merits, on a de novo standard that this woman fit the benefits, the eligibility for benefits. She was disabled. She's entitled to her benefits. And we have a plan coming back and saying, well, we don't really disagree with that, but if we had had a better standard of review, he might have had to rule our way because he might have had to determine that we weren't so unreasonable in the way that we handled her claim. And it's just ironic. Well, we can affirm the district court on any basis that the record supports. So regardless of whether or not that nuance was argued, if we feel as a matter of law that there was an improper delegation or that the evidence doesn't support it, we can rule that way. And that's my point, Your Honor. Thank you. Thank you. Rebuttal? Thank you, Your Honor. Your Honor, I'd just like to make two points. With respect to the factual issue of whether or not there was proper delegation under the 93 plan, given that the judge canceled the hearing, this is exactly the kind of factual issue that might have been aired there, and no one had an opportunity to do that. Do you agree with opposing counsel that generally when an ERISA hearing takes place that it's on the papers that are already in, that there's no live testimony? That's correct, Your Honor. It's a trial on the administrative record. But you do get the opportunity to discuss and argue out these issues. And if, for example, the judge thought that the doctrine of contra pro forentum applied, that could have been discussed. And if the judge thought that the declaration was inadequate? Well, then evidence could have been submitted or, I mean, after all, there was a deposition taken, there was a declaration. Supplemental evidence could have been submitted to address the point, if that came to the surface at the time. The second point. Let me just ask you one other question. Judgment on the pleadings, when we're reviewing that, do we still look at the factual findings under a clear error standard of review? Well, I don't think there are any factual findings here, Your Honor, that are at issue. What's at issue is the standard of review. And the legal principles he applied in interpreting the plan. Well, but you said that you would need an evidentiary hearing to determine whether or not the factual predicate for his finding that there was insufficient documentation regarding the delegation. Well, Your Honor, I would say two things about the district court's inadequate delegation argument. I would say that he's legally wrong. So you say that's a legal issue for de novo review as opposed to a factual determination? Yes. But then secondarily, if you construe it as a factual question, I believe the judge said there was no documentation and that he is accepting the plaintiff's argument that delegation had to be in writing. That's a legal point and that's an error. I understand. All right. Thank you, counsel. You've exceeded your time. You want to make one last point? My last point is, if the proper standard were applied, that is, abuse of discretion, it's not just that you get a more deferential standard. The question before the court would be different. The question would not be, was she disabled? But the question would be, did the committee that made the decision abuse its discretion in arriving at its decision? I understand. Thank you, Your Honor. All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. Thank you to both counsel for a very helpful argument.
judges: Trott, Rawlinson, Murguia